IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MAXINE MARTIN; VIOLA DAVIS,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | |
| ) | **CASE NO. CV 01-B-0605-S** |
| **DOLGENCORP, INC.; DOLLAR** ) | |
| **GENERAL CORPORATION,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendants' Motions for Summary Judgment. (Docs. 154 and 156.)[1] Plaintiffs Maxine Martin and Viola Davis have sued their former employer, defendants Dolgencorp, Inc. and Dollar General Corporation, alleging that defendants discriminated against them on the basis of their gender. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendants' Motions for Summary Judgment, (docs. 154 and 156), are due to be denied.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. **STATEMENT OF FACTS**[2]

At all times relevant to this case, defendants employed plaintiffs at Dollar General Store No. 4005 in Irondale, Alabama. (Doc. 158, Ex. 1 at 15; *id*., Ex. 2 at 25.) Laura Hardin was the Store Manager, plaintiff Martin was the Assistant Store Manager, and plaintiff Davis was a Cashier. (Doc. 158, Ex. 3 at 25.) Store 4005 was assigned to District 141 and the District Manager was Charles "Chuck" Till. (*Id*., Ex. 4 at 15-16.) Till served as the District Manager over Store 4005 from shortly before March 1999 and through plaintiffs' terminations on September 23, 1999. (*Id*. at 70; doc. 159, Ex. 8 at 317.) Till became a Regional Manager in February, 2000. (Doc. 158, Ex. 4 at 15-16.)

Defendants employed Amanda Ferguson as a District Manager In Training.[3] (*Id*., Ex. 5 at 17.) After her promotion, Ferguson assisted Till in supervising the stores in his district, including Store 4005. (Doc. 83 at 343-44.)

Shrinkage or shrink is "a loss of merchandise or cash that relates to the final inventory figure actually on hand versus what is booked in store." (Doc. 158, Ex. 4 at 91.) As of April 1999, defendants sent Progressive Counseling Guidelines for Shrinkage Performance ["Shrink Guidelines"] to District Managers. (*See* doc. 158, Ex. 4, ex. 2.) The Shrink Guidelines state:

---

[2]As noted above, for purposes of summary judgment evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor.

[3]Ferguson testified in her deposition that she was a District Manager In Training from August 1999 until February 2000. Such testimony is in conflict with other evidence that demonstrates Ferguson was District Manager In Training in March 1999.

3

Below please find guidelines for discussing shrinkage performance with your store management team. Please consistently apply guidelines for progressive counseling. Remember, progressive counseling should include documentation of the performance issues which resulted in shrink performance rating "below standard."

To ensure future success of all TEAMSHARE PARTNERS, please develop a shrink action plan with a specific time line for each store. Effective communication and monitoring of the plan is required to achieve superior results. *All Progressive Counseling should be completed within 7 days of receiving the final shrink results.*

| | |
|---|---|
| <u>VERBAL COUNSELING</u> | shrink of 2.55% to 2.80% will result in verbal counseling. |
| <u>WRITTEN COUNSELING</u> | shrink of 2.81% to 3.80% will result in written counseling. |
| <u>FINAL COUNSELING</u> | shrink of 3.81% or greater will result in a final counseling for the entire store team. |
| <u>TERMINATION</u> | will be considered for the store management team in watch stores whose shrink results are greater [than] 3.81% and are currently on final written counseling for shrink. |

(Doc. 158, Ex. 4, ex. 2 [emphasis in original].) The "store management team" includes the Store Manager, Assistant Store Manager, and the Third Key Holder. (Doc. 158, Ex. 4 at 128.)

Till testified that he followed the Shrink Guidelines in deciding to discipline plaintiffs following the March 1999 inventory. On March 10, 1999, defendants inventoried Store 4005. (Doc. 83 at 294; Doc. 158, Ex. 4, ex. 3.) The March 1999 inventory indicated a shrink of 10.67%. (Doc. 158, Ex. 4 at 3.) On April 12, 1999, Ferguson issued Hardin a Final

4

Counseling based on the excessive shrink from the March 1999 inventory; Hardin signed the Final Counseling on April 22, 1999. (*Id.*, Ex. 3, ex. 1.) Ferguson testified that she did not remember giving Hardin the Final Counseling, but she admitted that the Final Counseling bears her signature. (Doc. 83 at 48; Doc. 158, Ex. 5 at 36-37.)

Hardin testified that Ferguson told her to give Davis and Martin a similar Final Counseling, but that Ferguson did not tell her to write up Jeff Culbert, the Third Key Holder. (Doc. 158, Ex. 3 at 99-102.) Till testified that he expected all employees at store 4005 that had worked for a sufficient period of time would be written up for the shrink. (Doc. 158, Ex. 4 at 169.) Till testified that employees who had worked only two to three weeks before the inventory would not be held accountable; however, he agreed that two or three months would be a sufficient period of employment to warrant a final counseling based on considerable shrink. (*Id.* at 169.)

On April 10, 1999, Hardin issued Davis and Martin a Final Counseling for excessive shrink/substandard performance. (Doc. 158, Ex. 4, exs. 6-7; *id.*, Ex. 2, ex. 1; doc. 83 at 123.) Plaintiffs signed the Final Counselings on April 22, 1999. (Doc. 158, Ex. 4, exs. 6-7.) The same day defendants conducted a second inventory in as many months at the Irondale Store. (*Id.*, ex. 3.)

The results of the April inventory showed a shrink of 3.91%. (*Id.*) Because the store's shrink rate had improved, Till decided to give the store team another chance to reduce the store's shrink level to a percentage within Company guidelines. (Doc. 83 at 296.) No

5

discipline or termination was initiated based on the April inventory. However, Till told Hardin that the Final Counselings would stay in place and, if the shrink rate increased, those employees on Final Counseling would be terminated. (*Id*.)

On September 22, 1999, a third inventory was conducted at Store 4005. (Doc. 158, Ex. 4, ex. 3.) The results of this inventory showed shrink rate of 7.24%. (*Id*.) Till testified that he decided to terminate each Store 4005 employee that had been given a Final Counseling, and someone in defendants' Human Resources Department approved his decision. (Doc. 83 at 216-17.) Hardin and Plaintiffs Davis and Martin, who were all on Final Counseling – were terminated on September 23, 1999. (Doc. 158, Ex. 2 at 41-42; *id*., Ex. 3 at 81.)  Till testified that he decided to terminate plaintiff solely on the Shrink Guidelines based on the excessive shrinkage after the September 21, 1999 inventory and the fact that plaintiffs had received a Final Counseling. (Doc. 158, Ex. 4 at 73-74; *id*., Ex. 1 at 16; doc. 83 at 213-214.) He testified that he did not believe he had any discretion and that he had to terminate plaintiffs based on the September inventory. (Doc. 158, Ex. 4 at 87-88.)

According to defendants, shrinkage can result from pilferage (damage or misuse of the merchandise), shoplifting, employee theft, vendor theft, paperwork errors, or truck shortages. (*Id*. at 91-92.) However, defendants did not determine that one or both of the plaintiffs were personally responsible for causing the shrinkage. (*Id*. at 131.)

A Third Key Holder is an individual, other than the store manager or assistant store manager, who has a key to open and close the store. Jeff Culbert, the Third Key Holder, was

a part-time employee at Store 4005. (Doc. 158, Ex. 3 at 170.) Hardin had transferred Culbert to the Irondale Store on May 27, 1998. (Doc. 83 at 94, 96.) Culbert was part of the store management team. (Doc. 158, Ex. 3 at 75; doc. 165, Ex. 13 ¶ 4-5.) Culbert was the Third Key Holder at the Irondale store during the March, April, and September inventories, but he was never disciplined for the store's high shrink rate. (Doc. 158, Ex. 2 at 54; *id*., Ex. 3 at 75; doc. 165, Ex. 13 ¶ 6.)

### III. DISCUSSION

Plaintiffs allege that they were terminated because of their gender. Their claims are based on circumstantial evidence. In this circuit,

> Where direct evidence of discrimination is absent, a plaintiff establishes a circumstantial, prima facie case of racial discrimination based on disparate treatment by showing several things: '(1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside [her] classification more favorably; and (4) [she] was qualified to do the job.'"

*Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)(quoting *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973))); *see also Burke-Fowler v. Orange County*, 447 F.3d 1319, 1323 (11th Cir. 2006); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984). The Eleventh Circuit Court of Appeals has held that a plaintiff can establish that an employer treated similarly-situated employees outside her protected class more favorably by showing either that defendant replaced her with one outside the protected class or that it disciplined her more harshly than one outside the protected class for nearly

identical conduct. *Nix*, 738 F.2d at 1185; *see also Burke-Fowler*, 447 F.3d at 1323 ("When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, [the court] evaluates 'whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways.'")(quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)).

In this case, plaintiffs contend that they were terminated for large shrink rates when similarly-situated male employees – namely Culbert, a Third Key Holder at Store 4005; and Dickerson and Cook, Store Managers - were not disciplined at all. Defendants contend that these male employees are not similarly-situated to plaintiffs.

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield*, 115 F.3d at 1562; *see also Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). "The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)(internal quotation omitted). "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions." *Id*.

Defendants assert that plaintiffs were terminated because of high shrinkage in accordance with the Shrink Guidelines. They contend that they did not rely upon evidence

8

that plaintiffs were personally responsible for the high shrink numbers. Defendants argue that they considered only that plaintiffs worked at Store 4005 at the time of the March 1999 inventory, that they received a Final Counseling for high shrinkage, and that they had another high shrinkage in September 1999. Defendants contend that the Shrink Guidelines compelled their decision to terminate plaintiffs.

Plaintiffs have submitted evidence that Culbert, the only male employee at the Irondale store and a Third Key Holder, was not given a Final Counseling following the March 1999 based on Ferguson's instructions. Although defendants dispute that Culbert was similarly situated,[11] the court finds sufficient evidence, viewed in the light most favorable to plaintiffs, to establish that Culbert was similarly situated to plaintiffs and, was not disciplined for the March 1999 shrink or the September 1999 shrink.[12] Because, plaintiffs have established a prima facie case of discrimination on the basis of gender, the burden shifts to the defendants to articulate a reason for their decision to discipline and terminate plaintiffs.

---

[11]Defendants argue that Culbert was not employed at the Irondale store in March 1999 and that he had been at the Irondale store for less than 90 days at the time of the September inventory. They further argue that Culbert was never a Key Holder at the Irondale Store. However, the record contains testimony to the contrary, *see* e.g. Ex. Doc. 165, Ex. 13 at 194-6, and, when deciding a motion for Summary Judgment, evidence favoring the non-moving party is to be believed. At trial the jury may very well believe Culbert was not similarly situated to the plaintiffs in which case its verdict will be for the defendants.

[12]For purposes of summary judgment the court will withhold a decision on whether Dickerson and Cook are proper comparators. The court invites a Motion in Limine prior to trial on this issue with the relevant evidence filed with the motion.

Once a prima facie case is established, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decisions at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). After an employer articulates a legitimate, non-discriminatory reason, plaintiffs must show that the proffered reason is pretext for discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). "A plaintiff may show pretext by either directly persuading the court that a discriminatory reason motivated the employer, or by indirectly showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256. The relevant inquiry on the issue of pretext is "highly focused" – "The district court must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1537-38 (11th Cir. 1997)(citing *Cooper-Houston v. Southern Ry. Co.*, 37 F.3d 603, 605 (11th Cir. 1994)).

"To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision." *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995)(Johnson, J, concurring)(citations omitted); *see Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997)(Evidence of a

pretextual explanation can be established by showing "that the employer's proffered reasons are (1) factually baseless, (2) not the actual motivation for the [employment decision]; or (3) insufficient to motivate the [employment decision].").

Defendants contend that they terminated plaintiffs because of the high shrink rate in September and because plaintiffs had been given a Final Counseling for a previous high shrink rate. They argue that these facts compelled them to terminate plaintiffs based on the Shrink Guidelines.

Although defendants have a policy that requires consistent disciplinary action for all employees if their store exceeds the Shrink Guidelines, a reasonable jury could find that defendants did not apply the policy to similarly-situated male employees. "While [defendants] may decide that [high shrink percentages] may render an employee unqualified for employment, this criterion must be 'applied, alike to members of [both genders],' and Title VII is violated if, as [plaintiffs] alleged, it was not." *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 (1976)(quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973))(holding that evidence of similarly situated white employees were retained or rehired was "especially relevant" to the issue of showing employer's articulated reasons was a pretext for race discrimination – "respondent must . . . be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness . . . were nevertheless retained or rehired.

11

Petitioner may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.").

Based on the evidence that defendants did not discipline a similarly situated male employee for high shrink percentages, a reasonable jury could find that defendants' reason for disciplining and terminating plaintiffs – excessive shrink percentage – did not actually motivate defendants or was insufficient to motivate defendants, and that plaintiffs' gender was the reason they were disciplined and ultimately were terminated for a high shrink percentages when a male employee was not. Because a reasonable jury could find that defendants' articulated reasons for disciplining and subsequently terminating plaintiffs is not worthy of credence, defendants' Motions for Summary Judgment are due to be denied.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are material facts in dispute and defendants are not entitled to judgment as a matter of law. An Order denying defendants' Motions for Summary Judgment, (docs. 154 and 156), will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 30th day of September, 2008.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE